BastlEj J.
The petitioner claims to be exempt from military service in the army of the- Confederate States upon tbe ground that, he is a policeman of the city of Ral-éigh. His claim is resisted in the return of the defendant upon the allegation that the petitioner is not a-policeman, hut only a contractor to keep the city pumps ia order. -
The testimony of the Mayor of the city, together with the other proofs taken and filed in the*cause, Satisfy us that the, petitioner is one of the city police, though, in addition to his duties as such, he has had assigned to him the charge of keeping, the pumps, in repair, Upon the' facts thus appearing from the pleadings and* proofs, the question arises, whether the petitioner i§ entitled *tó ex-, emption from conscription. This is a question of law, and it is our duty now to proceed to its consideration.
*14 It is now generally, if not universally conceded, that the Confederate Congress have'no power-to order the conscription of State officers. The principle is well expressed by the Supreme Court of Appeals of Virginia, in the opinion given in the case of Burroughs vs. Peyton, and we express our full concurrence in it. “ The State government» are an essential part of our political system; for upon the separate and independent so,vereigntjr oí the States, the foundation of our confederation rests.. All powers not delegated to the Confederate States by the Constitution, nor prohibited by it to the State, are reserved to the States respectively, or to the people thereof and the Confederate States guarantee to each State, a republican form of government.
It is absurd to suppose that the government of the Confederate States can rightfully destroy the States which created it: and all the powers conferred on it must be understood to have been given tyith the limitation, that in exercising them, nothing slutll be done to interfere with the independent exercise of its sovereign powers by each State. Congress can have no' right, therefore, to deprive it State of the services of any officer, necessary to the aú.iim of its government; and the State itself, is the sole judge as to the officers that are necessary for that purpose..1'
We are not aware that the Confederate. Congra»", have ever -a t up a claim to the exercise of a power ineone’e-tent wit i iliis fundamental principle Of State sow. ¡eignty. On the contrary, in all the acts it has passed, granting exemptions from conscription, it has expressly mentioned,» in some form or other,-State officers, ds being entitled to exemption'. Thus, in the act of April 2lst, 1862, “all judicial-and executive officers of State governments” are *15 exempted. In the act of the 11th October, 1862, which repeals that of April, the officers, judicial and executive, of the State governments, are again declared tobe exemp-' ted. The act of May the 1st, 4863, provides, that in addition to the State officers exempted by the act of October 11th, 1862, there shall bo exempted all State officers whom the Governor of any State may claim to have exempted for the due administration of the government and. laws thereof; but this exemption shall not continue in any State after the adjournment of the n.ext regular ses*-sioh of its Legislature, pnless such Legislature- shall” by law exempt them 'from 'service in the provisional army of the Confederate States.”
It is unnecessary to consider the-effect of these exemption acts, because they are all repcaled'by the act of the 17th February, 1864, and «State officers were exempted in the following terms.: “ The members of the several State Legislatures, and such other State officers as the Governors of the respectivo States may certify to he necessary for the proper administration of the State governments.” "If the petitioner bo a State officer, and luid he produced any sue!? certificate in bis behalf from the-Governor of this'State, we must presume that'the-Coniederate officers would have admitted it, and have exempted him accordingly ; but he has failed to produce any such certificate, and yet he insist:;, nevertheless, «¡that liis right to exemption is oshtblished by the action of our General Assembly. That boiiy, by an act ratified the 14th day of December, 1863, mentions several officers as “ necessary to carry-on the operations of the State government,” for whom claims had been made and obtainéd under the act of Congress of^ May, 1863, and then itself claims and exempts them from, conscription. Among the officers thus claimed to be ex- *16 cmpt arc the “ Mayor and police of Raleigh.” See laws ,of extra session in í)ec., 1883, cb. 14; That same body,, at. its extra session in May, 1864, by a resolution ratified the 28tfi day of the month “ demands ” the exemption of the same, together with some other officers, prefacing jit with a preamble, declaring “that the fearless and free discharge ,oi[ the officers of the State is ‘essential to the preservation of its sovereignty,” and that “ Congress baa no power to, conscript Btate officers.”
Has the Legislature of the State the right to • 'demand1'’ these exemptions?, it is very decidedly our opinion thafc-it has : and that it has it, to the exclusion of every other department of the State government. It is clear beyond all question, thatj within the limits.of the written Constitution which the people of the State have imposed-on the. government, the legislative power is the supreme power in the State. Among its vast powers -of legislation . which are unlimited and unrestricted, except by the Constitution, is that of ascertaining what officers, in addition to those specified in the-Constitution, are • necessary for the efficient management of the affairs of the State, and •then of appointing the’ officers and prescribing* their duties. 'The powers of the other two great departments of government, are very different. To the judiciary is assigned the..power i.f expounding the Constitution and laws,-while the Exoc-u&ve has,- solely the power-., to enforce their faith fin! execution. From this, it seems to us, to follow as a logical sequence, that when it is shown that each State is th,e sole judge as to the officers who are necessary to the action of its government, its Legislature, «-and its Legisle ture alone, is the organ by which its judgment is to he ascertained and made known. It may well' ]>e, that tho Legislature can select and appoint the Gov- *17 ei'nor as its agent to certify its decision, but we are unable to find, among the powers given to the Confederate government, any authority to confer upon .the Governor of the State the power to decide, and - then to certify hia decision, as to who are the necessary State officers.
The cohclusion to which this course of reasoning leada us, is, that the petitioner is entitled to his discharge, provided he is such an officer as the Legislature has- tha power to exempt as being necessary in the administration of thdlaws of the State. Police are defined by Webster to be “a body of civil officers, especially in cities, for enforcing, the laws.” Cities and towns- are well known parts, and very important parts, of the organization of the State ; hence the enforcement of the laws within their chartered limits, must be a matter of great importance to the weal of the State ‘itself.. It follows, as a necessary consequence, that the police of'all the larger towns, and especially of the capital of a State, must be deemed essential to tire full, complete and beneficial action of the State government. ' .
The conclusion is that there is no error, in the judgment rendered in the Cpurt below.
Judgment jbr the petitioner.